UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL L. COLE,

    Plaintiff,

v.                                                                              Case No. 05-73018

GM RETIREMENT PROGRAM                         HONORABLE AVERN COHN
GM LIFE & DISABILITY BENEFITS PROGRAM,
and GENERAL MOTORS CORPORATION,

    Defendants.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

This is an ERISA case.  The defendants are GM Retirement Program, GM Life & Disability Benefits Program, and General Motors Corporation (collectively GM).  Plaintiff Carl Cole (Cole) is a recipient of disability pension benefits from GM. Cole's First Amended Complaint includes the following five counts:

    I.     Denial of Benefits - Improper Recalculation,

    II.    Denial of Benefits - Improper Set-off,

    III.   Failure to Comply with ERISA's Disclosure Requirements,

    IV.   Failure to Comply with ERISA's Claims Procedures,

    V.    Violation of Truth in Lending Law,

Count V was withdrawn.  The Court then bifurcated the claims for benefits under Counts I. and II. from the claims regarding GM's alleged failure to follow ERISA's requirements

under Counts III. and IV.  See Order of Bifurcation filed November 1, 2006.

On January 11, 2007, the parties stipulated to withdraw Counts I. and II. Therefore, only Counts III. and IV. remain.

Before the Court is GM's motion for summary judgment on Counts III. and IV. For the reasons that follow, the motion is GRANTED.  This case is DISMISSED.

## II.  Background

Cole worked as a salaried employee of GM until July 19, 1995.  At that time, Cole began disability leave due to major depression.  He first received 12 months of sickness and accident benefits, until April 2, 1996.  Cole then began receiving Extended Disability Benefits (EDB) under the GM Disability Program, beginning in April 1996.  Cole also began receiving disability retirement benefits under the GM Retirement Program, beginning on April 1, 1996, at the age of 53.  Under the applicable plans, Cole's EDB was to be adjusted (reduced) when other benefits, such as retirement benefits or Social Security benefits, were also received.  In July of 1996, MetLife, who processed claims for GM, notified Cole that an adjustment to his EDB was necessary due to his receipt of retirement benefits for April and May 1996 and that Cole had received an overpayment. GM recovered the overpayment by deducting amounts from the EDB.  However, no adjustments were made going forward, which resulted in Cole continuing to receive his full EDB and retirement benefits.

It was not until years later, in July 2003, that an audit revealed that MetLife had not reduced the EDB, resulting in an overpayment of $85,329.63.  In August 2003, MetLife advised Cole of the overpayment and requested reimbursement.

On July 1, 2004, Cole, through counsel, wrote to advising that he objected to the

recalculation of his benefits. In the July 1, 2004 letter, counsel also states that previously on October 7, 2003, another attorney had written MetLife regarding this matter but did not receive a response. It is undisputed that the administrative record does not contain such a letter, nor did counsel attach a copy of the October 7, 2003 letter to his July 1, 2004 letter.

On September 3, 2004, MetLife advised Cole's counsel that it received his July 1, 2004 letter and was investigating his claim. On October 25, 2004, MetLife wrote to Cole's counsel and described in detail how the overpayment occurred and the computation for the overpayment. MetLife also said that it would be willing to forego $73,684.95 of the $85,329.63 overpayment and only recover $11,644.68, which left a remaining balance of $3,894.73. MetLife also advised Cole of his appeal rights.

On December 1, 2004, Cole's counsel wrote MetLife and advised that Cole accepted the compromise and enclosed a check for $3,894.73. Cole's counsel, however, also requested that MetLife agree that no further adjustments or demands for repayment would be made.

On December 14, 2004, MetLife responded that it could not make any promise regarding further benefit adjustments and advised that it had learned that Cole had received a retroactive award of Social Security benefits which, if no adjustments were made, would result in further overpayments. MetLife advised that it would review Cole's EDB amount once it receives more information regarding his Social Security award.

On December 27, 2004, Cole's counsel responded and agreed that future benefits may be adjusted by receipt of a retroactive Social Security award. In this letter, Cole's counsel also expressed frustration regarding alleged telephone calls with the

benefit center, stating:

> I believe that you have been misinformed regarding the Pension Administration's Center's policies for telephone discussion. The Pension Administration Center told boy Mr. Wildboer (Mr. Cole's previous attorney) and me that its policies prohibited any discussion over the telephone, and that all communications must be handled in writing (for example, the Pension Administration Center refused to even confirm such simple matter as whether Mr Wildboer's October 7, 2003 letter had been received). This is the same policy that you stated in your letter ("However, if you should have nay [sic] questions concerning Mr. Cole's disability benefit overpayment, please feel free to contact me in writing.") This process is very frustrating, because it stifles follow-up questions to fill in information that was omitted from your letter and to clarify the listed information that has been supplied. Mr. Cole and I have been forced to chose between making a decision on limited information, or to delay resolution of this matter for months attempting to get complete answers to our questions. Mr. Cole depends upon his Extended Disability Benefits for the daily necessities of life. The refusal to answer any questions by telephone, has unnecessarily, extended the period that Mr. Cole has gone without the benefits that he depends upon to live. If the Extended Disability Benefits Plan fiduciaries truly operate the Plan "solely in the interest of the participants and beneficiaries," as required by ERISA § 404(a)(1), then I suggest that this draconian policy be changed.

On April 1, 2005, GM advised Cole that as a result of his Social Security award, overpayments of his retirement benefits and EDB benefits in the total amount of $53,262.36 ($20,269.10 in EDB and $32,993.26 in retirement benefits).

On April 19, 2005, Cole's counsel wrote GM objecting to the alleged overpayment of retirement benefits. GM and Cole's counsel then exchanged letters in June 2005. Cole's counsels June 13, 2005 letter again complains about failed attempts to resolve the overpayment issue through telephone calls.

On July 7, 2005, GM wrote Cole's counsel explaining in detail the overpayment calculated relative to Cole's award of Social Security benefits and denied Cole's objections to the calculations.

On August 4, 2005, Cole sued GM. Cole filed an Amended Complaint on

October 13, 2006, making the claims noted above.

### III. Summary Judgment[1]

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

---

[1] Generally, summary judgment principles are inapposite in ERISA cases. See Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998). However, where, as here, a complaint makes procedural challenges to the administrator's decision, summary judgment principles are appropriate to a decision on the challenge.

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). As another United States District Court Judge has observed:

> [T]he mere existence of a dispute over ultimate facts to be inferred does not preclude summary judgment. In that situation, the court, instead of automatically denying the motion, must decide the legal question whether the dispute is genuine, i.e. whether an inference adverse to the moving party is sufficiently plausible that it could reasonably be drawn by a jury.

William W. Schwarzer, "Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact," 99 F.R.D. 465, 487 (West 1983).

## IV. Analysis

### A. Count III.

Count III - FAILURE TO COMPLY WITH ERISA DISCLOSURE REQUIREMENTS, reads in relevant part:

62. On July 1, 2004, Plaintiff requested a copy of the GM Disability Plan.
63. On April 19, 2005, Plaintiff requested a copy of the GM Pension Plan and the GM disability Plan.
64. Defendant General Motors Corporation, acting as administrator for the GM Disability Plan, failed to ever provide Carl Cole with a copy of the GM

> Disability Plan or the GM Pension Plan.
> 65. As a result of General Motors Corporation's failure to provide a copy of the GM Disability Plan, Plaintiff Carl Cole was forced to make a decision regarding whether to comply with the demand for repayment of $11,644.68 or to continue pursuing his appeals, without the opportunity to review the GM Disability Plan.
> 66. Defendant General Motors Corporation's failure to provide a copy of the GM Disability Plan is a violation of ERISA § 104(b)(4).
> 67. As a result of Defendants' failure to provide Plaintiff Carl Cole with a copy of the GM Disability Plan, as required by ERISA § 104(b), Plaintiff Carl Cole has incurred attorney fees and litigation costs, for which he is entitled to reimbursement under ERISA.
>
> Wherefore, Plaintiff Carl Cole respectfully prays that the Court enter judgment in favor of Plaintiff Carl Cole and against Defendant General Motors Corporation (1) ordering that Defendant General Motors Corporation provide Plaintiff Carl Cole with copies of the GM Pension Plan and the Gm Disability Plan, (2) awarding statutory damages to Plaintiff Carl Cole in the amount of $110.00 per day from the date when these documents should have been provided, until the date when those documents are provided, (3) awarding attorney fees and litigation costs under ERISA § 502(g)(1), and (4) awarding court costs and statutory interest.

ERISA provides that plan documents must be provided to beneficiaries upon their request. See 29 U.S.C. § 1024(b)(4) [ERISA § 104(b)(4)]. According to this provision, the Plan Administrator must produce a copy of the "latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Id. ERISA also establishes penalties for those plan administrators who fail to respond to reasonable requests for documents, in that they "may be personally liable ⋯ in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1).

It is clear that the request for plan documents must be sent to the plan administrator. Both plans at issue, the GM Disability Program and the GM Retirement

7

Program designate GM as the Plan Administrator. Summary Plan Descriptions also designate GM as the Plan Administrator and provide the proper address as Mail Code 482-C26-A68, 300 Renaissance Center, P.O. Box. 300, Detroit, Michigan, 48226-3000.

Here, Cole's requests for plan information referenced in the complaint (the letters of July 1, 2004 and April 19, 2005) were not directed to GM as Plan Administrator at the proper address. Rather, the July 1, 2004 letter was directed to MetLife at the National Benefit Center, Financial Department, P.O. Box 5178, Southfield, MI 48086-5178. The April 19, 2005 letter was directed to GM Benefit & Service Center, P.O. Box 77003, Cincinnati, OH 45277-0070. Neither address was correct. Cole does not respond to GM's argument on this point. Thus, Cole never made proper request for information under ERISA.

Moreover, even assuming Cole had made a proper request, liability does not automatically attach. In deciding whether to impose a penalty under 29 U.S.C. § 1132(c)(1), courts are advised to determine if the plaintiff beneficiary was prejudiced as a result of the Plan Administrator's delay in producing the plan documents. See, e.g., Gatlin v. Nat. Healthcare Corp., 16 Fed. Appx. 283, 289 (6th Cir. Mar. 2, 2001) (unpublished) ("prejudice to the beneficiary is a logical concern for in deciding whether to impose a penalty" under § 1132(c)(1) for failure to provide documents.); Bartling v. Fruehauf Corp., 29 F.3d 1062, 1068 (6th Cir.1994) ("[m]any courts have refused to impose a penalty under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith.").

Here, Cole has not identified any cognizable prejudice as a result of GM's alleged failure to provide him with plan documents. Indeed, Cole's counsel was

8

provided with relevant requested documents during Cole's appeal as indicated by the October 25, 2004 letter from MetLife.  This is particularly so now that Cole has chosen to dismiss his claims in Counts I. and II. alleging an improper recalculation of his benefits.  As such, GM is entitled to summary judgment on Count III.

B.  Count IV.

Count IV, FAILURE TO COMPLY WITH ERISA's CLAIMS PROCEDURES, reads in relevant part:

70. On October 7, 2003, Plaintiff Carl Cole objected to the GM Disability Plan's recalculation of his Extended Disability Benefits.
71. In accordance with ERISa § 503, and the Department of Labor Regulations issued thereunder, the GM Disability Plan must respond within forth0five (45) days to a participant's objection to a disability benefit determination.
72. The GM Disability Plan never responded to Carl Cole's objections dated October 7, 2003.
73. On July 1, 2004, Plaintiff Carl Cole again objected to the GM Disability Plan's recalculation of his Extended Disability Benefits.  In order to prefect his objections, Carl Cole also requested a copy of the GM Disability Plan, information and documents regarding the calculation of his extended disability benefits, and an explanation of the appeals procedure.
74. The GM Disability Plan did not respond within forty-five (45) days to Carl Cole's objections dated July 1, 2004.
75. The GM Disability Plan did not provide Carl Cole with any information or documents prior to rendering it [sic] decision regarding Carl Cole's objections on October 25, 2004.
76. On April 19, 2005, Defendant [sic] Carl Cole objected to the amount of the set-off determined by the GM Pension Plan and GM Disability Plan.  In order to perfect his objections, Carl Cole requested a copy of the plan, information and documents regarding the recalculation of his benefits, an explanation of the appeals procedure, and an opportunity to respond to these documents.

77. The GM Disability Plan did not respond to the April 19, 2005 objections within forty-five (45) days as required by ERISA.
78. The GM Disability Plan did not provide Carl Cole with any information or documents prior to rendering it [sic] decision regarding Carl Cole's objections by letter dated July 7, 2005.
79. The GM Pension Plan never responded to Carl Cole's objections dated April 19, 2005.
80. The failure to provide Carl Cole with information and documents in order to perfect his appeal, violates the claims procedures mandated by ERISA § 503.
81. The GM Pension Plan and the GM Disability Plan maintain a policy of refusing to allow a participant to be represented by an attorney in regard to benefit determinations being made by the GM Pension Plan and/or the GM Disability Plan.
82. The policy of refusing to allow representation of a participant by an attorney violates the Claims Procedures required by ERISA § 503, as implemented by Department of Labor Regulation, § 2560.503-1(1).
83. As the result of Defendants' violations of the Claims Procedure provisions of ERISA, Plaintiff Carl Cole has been damaged by the loss of a fair review and litigation costs, for which he is entitled to reimbursement under ERISA,

Wherefore, plaintiff Carl Cole respectfully prays that the court enter judgment in favor of Plaintiff Carl Cole and against Defendants GM Retirement Program, GM Life & Disability Benefits Program, and General Motors Corporation (1) ordering that Defendants comply with the claims procedures required by ERISA, including responding to objections in a timely manner, disclosing information and documents requested by participants, and allowing representation of participants by an attorney, (2) awarding attorney fees and litigation costs under ERISA § 502(g)(1), and (3) awarding court costs and statutory interest.

Although it is difficult to understand Cole's claim, it appears that he is claiming a violation of basic due process rights under ERISA, found in 29 U.S.C. § 1133 [ERISA § 503]. The statute, entitled "claims procedure," reads:

In accordance with regulations of the secretary, every employee benefit plan shall-

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (2006).

The general mandate of § 1133, therefore, is "to provide participants with adequate notice of the reasons for denying benefits and to afford a reasonable opportunity for a full and fair review," or appeal, of the decision. McCartha v. National City Corp., 419 F.3d 437, 444 (6th Cir. 2005). To this effect, the Department of Labor has promulgated regulations pursuant to § 1133, which have been codified at 29 C.F.R. § 2650.503-1(g). The regulations elaborate upon the purposes behind § 1133 by providing specific guidance for notification of denial or termination of benefits, stating in pertinent part:

> The notification shall set forth, in a manner calculated to be understood by the claimant-
>
> (I) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review....

29 C.F.R. § 2650.503-1(g) (2006). "These requirements insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case." Castle v. Reliance Standard Life Ins. Co., 162 F. Supp. 2d 842, 859 (S.D. Ohio 2001) (quoting Halpin v. W.W. Grainger,

Inc., 962 F.2d 685, 688 (7th Cir. 1992)).

In determining whether denial notification and subsequent review procedures satisfy the requirements of § 1133, the Sixth Circuit has adopted the "substantial compliance" standard. See McCartha, 419 F.3d at 444; Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 460 (6th Cir.2003). In making the assessment of whether there was substantial compliance, rather than mere technical compliance, the Court considers "all the communications between the administrator and plan participant." McCartha, 419 F.3d at 444. In this analysis, it is critical for the Court to "determine whether the plan administrators fulfilled the essential purpose of [ § 1133]-notifying [Plaintiff] of their reasons for denying his claims and affording him a fair opportunity for review." Marks, 342 F.3d at 461. But, "when claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." Kent v. United of Omaha Life Ins. Co., 96 F.3d 803, 807 (6th Cir.1996).

Here, Cole first alleges that GM violated the claims procedures because it never responded to the October 7, 2003 letter written by his former counsel. However, as noted above, the administrative record does not contain any evidence that GM received the letter, nor did Cole's present counsel attach the letter to his later correspondence regarding the letter. Cole makes the bald assertion that GM has a "policy" of "throwing out" letters from attorneys. There is no evidence to support such an assertion. This allegation does not arise to a violation of § 1133.

Cole also alleges that GM violated § 1133 by not properly and promptly responding to his requests for information and objections to the recalculations of his

benefits. These complaints appear to arise out of Cole and Cole's counsel's frustration with their telephone communications with MetLife through the Benefit Center. Based on a review of the administrative record, with particular reference to the chronology prepared by GM, it is clear that GM substantially complied with ERISA's requirements and was responsive to Cole's requests and objections. The record as a whole, as evidenced by the myriad of communications between the parties, complies with the requirements of § 1133 in insuring that Cole understood the reasons for GM's decisions and his right to appeal GM's decisions regarding the recalculation of his benefits.

As to Cole's allegation that GM has a "policy" regarding attorney representation which violates ERISA, Cole provides no authority for the argument that any such policy violates ERISA. Moreover, it is clear that GM did respond to Cole's attorney. Overall, GM is entitled to summary judgment on Count IV.

### C. Damages

Finally, Cole cannot seek substantive damages, including attorney fees, for any alleged ERISA procedural violations. See Lake v. Metropolitan Life Ins. Co., 73 F.3d 1372, 1378 (6th Cir. 1996) ("plaintiffs would not be entitled to recover substantive damages even if we found that the SPD violated § 1022(a)(1) because violations of the procedural sections of ERISA do not give rise to claims for substantive damages"); Crawford v. Roane, 53 F.3d 750, 757 (6th Cir. 1995) (violation of ERISA's reporting and disclosure requirements does not entitle plaintiffs to a substantive remedy); Lewandowski v. Occidental Chem. Corp., 986 F.2d 1006, 1008 (6th Cir. 1993) (holding that failure to provide a plan beneficiary with documents as required under the Act does not give rise to a substantive remedy); Burgess v. Adams Tool & Engineering, Inc., 908

13

F. Supp. 473, 478 (W.D. Mich. 1995) (McKeague, J.) ("An employer's lack of notice is not a basis for extending COBRA's 18-month continuation coverage, but may result in the assessment of damages or civil penalties."); DiMarco v. Michigan Conference of Teamsters Welfare Fund, 861 F. Supp. 599, 610 (E.D. Mich. 1994) (Rosen, J.) ("remedies for a breach of ERISA's notice and disclosure requirements are limited to § 502(c) of the statute, 29 U.S.C. § 1132(c)").

Likewise, attorney fees are not available for fees incurred during the administrative proceeding, i.e. exhausting the appeal process. See Anderson v. Proctor & Gamble Co., 220 F.3d 449 (6th Cir. 2000).

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: February 8, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 8, 2007, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160